UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LOUIS DUPLAN,

          Plaintiff,

    - against -                              **MEMORANDUM AND ORDER**
                                                         15-CV-4136 (RRM) (LB)
THE CITY OF NEW YORK,

          Defendant.
----------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Louis Duplan brings this action against his employer, defendant the City of New York (the "City"), alleging race and national origin discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("§ 1981"). (*See generally* Second Am. Compl. (Doc. No. 17).) Before the Court is the City's motion to dismiss Duplan's second amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. (*See* Mot. Dismiss (Doc. No. 22).)

      For the reasons that follow, the City's motion is granted.

## BACKGROUND

      The following facts are taken from Duplan's second amended complaint and considered to be true for purposes of this motion to dismiss.[1] Duplan is "a Black, gay male from Haiti." (Second Am. Compl. at ¶ 7.) Beginning in 2002, Duplan was employed by the City in the Department of Health and Mental Hygiene (the "DHMH"). (*Id.*) From 2002–2005, Duplan served as the Assistant Director for the Administration Unit of the Environmental Health

---

[1] Duplan originally commenced this action *pro se* against the City on July 10, 2015. (*See* Compl. (Doc. No. 1).) On July 17, 2015, Duplan obtained counsel and filed his first amended complaint. (Am. Compl. (Doc. No. 5).) By Order dated November 18, 2015, Duplan was granted leave to amend his complaint for a second time; and on November 25, 2015, Duplan filed his second amended complaint. (*See generally* Second Am. Compl.)

Division. (*Id.*) From 2005–2011, Plaintiff served as the Director of Operations for the Administration Unit of the Bureau of HIV/AIDS Prevention and Control (the "Bureau"). (*Id.*)

## I. Factual Background Prior to Duplan's Formal Complaints

Around June 2011, Duplan applied to replace Randolph Rajpersaud as Director of Administration for the Bureau. (Second Am. Compl. at ¶ 9.) Rajpersaud was on the hiring committee to determine his own replacement. (*Id.*) Duplan had expressed interest in the position to Rajpersaud before the job vacancy was posted. (*Id.*) In July 2011, Duplan was passed over for the position, which was instead filled by "a White, straight, American-born woman named Lori Cohen." (*Id.* at ¶¶ 9–10.)

Duplan alleges that he "was the most logical candidate for the position," but he was discriminated against in the hiring process because of "his race, national origin, and sexual orientation." (*See id.* at ¶¶ 10, 13.) Duplan contends that he was more qualified than Cohen, who had only been working for the City for one year prior and had never performed the duties of the Director of Administration. (*Id.* at ¶¶ 10–11.) Between 2005–2011, Duplan had allegedly accompanied Rajpersaud to many meetings and fulfilled Rajpersaud's duties in his absence. (*Id.* at ¶ 9.) Moreover, Duplan was one of only two directors who had directly reported to the Director of Administration. (*Id.*)

Duplan "believe[s] that Mr. Rajpersaud had tried, in the months prior to the position being posted, to set the stage for, and justify, Plaintiff not receiving the position . . . by making false, derogatory comments about his performance to other managers, such as that he didn't take initiative and was insubordinate . . . ." (*Id.* at ¶ 13.) Duplan alleges that Rajpersaud "diminish[ed] the substance of Plaintiff's position in or about May of 2011" by "removing and transferring one of Plaintiff's five subordinates/supervisees" and removing and reassigning some of Duplan's responsibilities as Director of Operations. (*See id.*)

2

Duplan also alleges that Rajpersaud told him many times that "the Black people who worked in the Bureau were lazy and . . . that Haitians were troublemakers." (*Id.* at ¶ 12.) Duplan references other incidents that allegedly indicate Rajpersaud's negative feelings towards other black, gay, and Haitian employees. (*See id.*) Specifically, Duplan alleges that Rajpersaud had demoted Kermit Bostock, another black and gay employee, from the position of Director of Contracts and replaced him with "a non-Black (Hispanic) male named Jonathan Santos." (*Id.*) Rajpersaud also allegedly "hired a White female named Rosanna Volpe to the position of Director of Fiscal Management over a Black, Haitian employee named Merline Jean-Cashmir, even though Ms. Jean-Cashmir had a higher civil service title than Ms. Volpe." (*Id.*)

## II. Factual Background During and After Duplan's Formal Complaints

On July 26, 2011, Duplan filed a complaint with the DHMH's Equal Employment Opportunity ("EEO") Office alleging discrimination on the basis of race, national origin, and sexual orientation. (Second Am. Compl. at ¶ 14.) On August 9, 2011, Duplan also filed complaints with the New York State Division of Human Rights ("SDHR") and the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 15.) After an investigation, the SDHR found that no probable cause existed to support a finding of discrimination or retaliation; the EEOC subsequently adopted the SDHR's findings and issued a right-to-sue letter on July 30, 2012. (*See* Def.'s Ex. B (Doc. No. 24-2); Def.'s Ex. C (Doc. No. 24-3).)

Duplan alleges that after his July and August 2011 complaints, the City retaliated against him by stripping him of his duties under the pretext of "re-organization" and effectively demoting him. (*Id.* at ¶ 15.) Duplan alleges that the City and Rajpersaud stripped him of many of his job duties, including overseeing "human resources/personnel-related activities," "facilities management," and "several telecommunications-related and transportation-related issues." (*Id.* at ¶ 16.) The City also removed "his subordinates." (*Id.* at ¶ 16–17.) As a result, Duplan was

left "with a great deal of idle time," and his new position was "materially less prestigious, materially less suited to his skills and experience and materially less conducive to career advancement. (*Id.* at ¶ 17.) Moreover, while the Bureau's website still listed his position as Director of Operations, his annual performance evaluations listed his title as "Manager of Personnel." (*Id.* at ¶ 17.)

Duplan alleges that since his July and August 2011 complaints, he (1) was twice passed over for the job of Director of Administration (in 2013 and 2014); (2) did not receive a salary increase, unlike many other employees; and (3) was rigorously prosecuted in March 2014 by the EEO Office for sexual harassment claims made against Duplan, despite the complainant requesting merely an informal conference. (*See id.* at ¶ 18.) Moreover, the City allegedly overlooked Duplan in September 2014 for the position of Deputy Director of Human Resources and Operations, a job which Duplan claims contained all of the responsibilities stripped of him during the "reorganization." (*Id.* at ¶ 18(a).) When Duplan approached John Rojas, the Director of Administration, about why he could not reinstate Duplan's job responsibilities rather than find someone else to fulfill them as Deputy Director of Human Resources and Operations, Rojas claimed that "all matters were out of his control at that point." (*Id.*) Duplan also claims that Rojas was "told by the upper management that when it comes to Plaintiff, he (John Rojas) would be given information on a 'need to know' basis . . . ." (*Id.* at ¶ 18(d).)

In September 2014, Duplan emailed numerous City officials complaining that he had been discriminated against because of his race and retaliated against for his formal complaints to the EEO Office. (*Id.* at ¶ 19.) In October 2014, Duplan filed additional SDHR and EEOC charges, in which he complained about the City's retaliation against him for his formal complaints. (*Id.* at ¶ 20.) After an investigation, the SDHR again found that no probable cause existed to support a finding of discrimination or retaliation; the EEOC subsequently adopted the

4

SDHR's findings and issued a right-to-sue letter on June 16, 2015. (*See* Def.'s Ex. D (Doc. No. 24-4); Def.'s Ex. E (Doc. No. 24-5); Def.'s Ex. F (Doc. No. 24-5).)

Within a month of his 2014 SDHR and EEOC filings, Duplan was assigned maintenance jobs that "were below his civil service title." (*Id.* at ¶ 21.) Shortly thereafter, Duplan emailed another City official to complain that his new maintenance jobs were in retaliation for his formal complaints about discrimination. (*Id.* at ¶ 22.)

On June 16, 2015, Duplan received a Right to Sue letter from the EEOC, and on July 10, 2015, Duplan filed suit in this Court. (*Id.* at ¶ 6; *see generally* Compl.) In September 2015, after filing his first amended complaint, the City allegedly stripped Duplan of his "only remaining responsibility from when he was the Director of Operations by cancelling [his] access to the electronic system to complete time management, leaving [him] completely idle at work since then." (Second Am. Compl. at ¶ 25.)

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). The Court assumes the truth of the facts alleged, and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In the context of employment discrimination claims, "plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002). Instead, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). Specifically, the complaint must allege "the essential elements of an employment discrimination claim—that [the] plaintiff suffered discrimination on the basis of protected status." *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011).

## DISCUSSION

The City seeks to dismiss Duplan's § 1981 and Title VII claims as untimely, or in the alternative, for failure to state a claim for relief under the applicable standards. For the reasons that follow: Duplan's § 1981 discrimination, retaliation, and hostile work environment claims are dismissed for failure to state a claim for relief against a state actor; Duplan's Title VII retaliation claims arising before December 27, 2013 are dismissed as untimely; and Duplan's remaining Title VII retaliation and hostile work environment claims are dismissed for failure to state a claim for relief.

### I. § 1981 Claims

Duplan brings claims against the City under 42 U.S.C. § 1981; however, § 1983 "constitutes the *exclusive* federal remedy for violation of the rights guaranteed in § 1981 by state

6

governmental units . . . ." *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989) (emphasis added); *Buckley v. New York*, 959 F. Supp. 2d 282, 295 (E.D.N.Y. 2013) (finding § 1981 does not provide an implied private cause of action for damages against state and municipal actors). Although some courts have questioned whether *Jett* remains good law after Congress amended § 1981 in the Civil Rights Act of 1991, all but one of the federal appellate courts to have subsequently addressed the amendments have held that *Jett* remains good law. *See Gladwin v. Pozzi*, 403 F. App'x 603, 605 (2d Cir. 2010) (summary order) (citing *Jett* in finding that § 1983 provides the exclusive remedy for the plaintiff to state a claim against a state actor); *Smith v. Metro. Dist. Comm'n*, 105 F. Supp. 3d 185, 189 (D. Conn. 2015) (finding that although one circuit court has found the private right of action exists under § 1981, "every other circuit court to have considered the issue" has held otherwise).[2]

While some courts have construed a plaintiff's § 1981 claims as encompassed by that plaintiff's § 1983 claims, at no point has Duplan pleaded or argued § 1983 claims against the City. (*See generally* Compl.; Pl.'s Opp'n (Doc. No. 25)); *see, e.g.*, *Westbrook v. City Univ. of N.Y.*, 591 F. Supp. 2d 207, 223 (E.D.N.Y. 2008) (construing plaintiff's § 1981 claim as arising under § 1983 because plaintiff had alleged and briefed similar claims under § 1983). Accordingly, Duplan may not seek damages against state or municipal actors pursuant to § 1981. Thus, Duplan's § 1981 claims are dismissed for failure to state a claim for relief against the City.[3]

---

[2] *See also Brown v. Sessoms*, 774 F.3d 1016, 1021 (D.C. Cir. 2014); *Campbell v. Forest Pres. Dist. of Cook Cty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014); *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009); *Arendale v. City of Memphis*, 519 F.3d 587, 598 (6th Cir. 2008); *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1137 (10th Cir. 2006); *Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 464 (5th Cir. 2001); *Butts v. Cty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000); *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995).

[3] Even if the Court were to construe Duplan's claims as arising under § 1983, Duplan's 2011 claims of discrimination would be untimely under the applicable three-year statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (holding that the three-year statute of limitations applies to § 1981 claims that were made possible before the 1991 amendments). Additionally, to the extent that Duplan's § 1981 retaliation and

## II. Title VII Claims

### a. Timeliness of Claims

In order to bring Title VII claims in federal court, a plaintiff must first exhaust administrative remedies through the EEOC.  *See* 42 U.S.C. § 2000e-5(e); *Shah v. N.Y. State Dep't of Civ. Serv.*, 168 F.3d 610, 613 (2d Cir. 1999); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001).  A Title VII claimant must file an EEOC charge within 300 days of the accrual of the cause of action.  *See* 42 U.S.C. § 2000e-5(e)(1); *Legnani*, 274 F.3d at 685–86.  The claimant will then receive an EEOC "right to sue letter" and must file an action in court within 90 days of the receipt of that letter.  42 U.S.C. § 2000e-5(f)(1).

Here, Duplan failed to sue within 90 days of receiving the right to sue letter for his 2011 EEOC charge, dated July 12, 2012.  As such, the following claims related to his 2011 EEOC charge are dismissed as time-barred: (1) the failure to promote Duplan in July 2011, (*see* Second. Am. Compl. at ¶¶ 9–13); (2) the removal of many of Duplan's job responsibilities, which occurred "from in or about the end of July 2011 to in or about September 2011," (*see id.* at ¶ 16); (3) the alleged demotion to "Manager of Personnel" as listed in his annual performance evaluations in 2011, (*see id.* at ¶ 17) ; and (4) Rajpersaud's alleged attempts to decrease Duplan's salary in "late 2011," (*see id.* at ¶ 18(b)).  (*See also* Def.'s Ex. C (Doc. No. 24-3).)4

---

hostile work environment claims are not time-barred, they are dismissed for failure to demonstrate a causal connection and failure to demonstrate sufficiently severe or pervasive harassment, respectively.  *See* Section II.b, II.c *infra*; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 22015) (finding that the elements of a retaliation claim under § 1983 mirror those under Title VII).

4 In resolving motions to dismiss, courts may consider documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records.  *See Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006).  Accordingly, this Court has considered the SDHR and EEOC determinations as referenced in Duplan's second amended complaint and attached in the City's brief.  *See Macer v. Bertucci's Corp.*, No. 13-CV-2994 (JFB) (ARL), 2013 WL 6235607, at *1 n.1 (E.D.N.Y. Dec. 3, 2013) ("[I]n deciding motions to dismiss in discrimination actions, courts regularly take notice of [SDHR] filings and determinations relating to a plaintiff's claims.").

Moreover, any Title VII discrimination claims brought by Duplan before December 27, 2013 – 300 days before his October 23, 2014 administrative filing to the EEOC – are dismissed as time-barred. Although a number of Duplan's factual allegations lack specific dates, to the extent that the following claims occurred before December 27, 2013, they are dismissed as time-barred: (1) the failure to promote Duplan to "Director of Administration" in "late 2013," (*see* Second Am. Compl. at ¶ 18(c)); (2) the related allegation that the individual who filled the Director of Administration position in 2013 "alienated, humiliated, and isolated" Duplan, (*see id.* at ¶ 18(d)); (3) the failure to promote Duplan to various managerial positions "since August 2011," (*see id.* at ¶ 18(g)); and (4) the failure to give Duplan a merit salary increase on an unknown date in or about late 2013 to late 2014, (*see id.* at ¶ 18(e)). (*See also* Def.'s Ex. D (Doc. No. 24-4); Def.'s Ex. E (Doc. No. 24-5).)

### b. Retaliation Under Title VII

Duplan centers most of his complaint on claims of retaliation, asserting that alleged adverse employment actions taken against him after his 2011 complaints were motivated by discriminatory animus. For Duplan's retaliation claims to survive a motion to dismiss, Duplan must plausibly allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (internal citation and quotation marks omitted). While the second amended complaint fails to allege that anyone with knowledge of Duplan's protected activity retaliated against him, even assuming that Duplan demonstrates the first two elements of the prima facie case of retaliation, Duplan fails to plausibly allege a sufficient causal connection for the alleged retaliatory actions that occurred before he filed his October 2014 EEOC charge and

fails to plausibly allege an adverse employment action for the alleged retaliatory actions that occurred after he filed his October 2014 EEOC charge.

### i. Causal Connection

To plead causation for a retaliation claim, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *accord Univ. of Texas Sw. Med. Ctr. v. Nassar*, 123 S. Ct. 2517, 2527 (2013). A plaintiff can demonstrate a causal connection indirectly by demonstrating a "very close" temporal proximity between the alleged adverse employment actions and the plaintiff's protected activity, or directly by evidence of retaliatory animus against the plaintiff. *Vega*, 801 F.3d at 90; *accord Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see Chang v. Safe Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) (holding that an almost one-year gap "undermin[es] any causal nexus based on temporal proximity); *see also Woodworth v. Shinseki*, 447 F. App'x 255, 258 (2d Cir. 2011) (fifteen-month gap); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) (six-month gap).

Here, the more than two-year gap between Duplan's protected activity in July 26, 2011 and the alleged retaliatory actions in 2013–14 undermines any causal nexus based on temporal proximity. (*See* Second Am. Compl. at 18; Pl.'s Opp'n at 19–28.)[5] Likewise, Duplan fails to plausibly allege any evidence that gives rise to an inference of retaliatory motive sufficient to demonstrate a causal connection. *See also Vega*, 801 F.3d at 90–91 ("It is not enough that retaliation was a 'substantial' or motivating factor in the employer's decision. . . . [But-for causation requires] that the adverse action would not have occurred in the absence of the retaliatory motive." (internal citation omitted)); *accord Littlejohn*, 795 F.3d at 319.

---

[5] For ease of reference, citations to Court documents utilize the Electronic Case Filing System ("ECF") pagination.

For example, Duplan alleges that the Bureau's investigation of a sexual harassment complaint filed against him by another Bureau employee was retaliatory. (*See* Second Am. Compl. at ¶ 18(f).) However, Duplan fails to identify any plausible retaliatory motive in connection with that investigation. In fact, Duplan does not allege that the employee who filed a sexual harassment claim against him was or is aware of Duplan's internal or external complaints. (*See generally id.*) Moreover, Duplan's own statement that his supervisor in 2014, John Rojas, was given information about Duplan "on a need to know basis" belies any evidence that Rojas knew of Duplan's protected activity and responded by failing to promote him or reinstate his job responsibilities. (*Id.* at ¶ 18(d).) Duplan cannot simply rely on the conclusory statement that "Defendant had retaliatory animus toward Plaintiff" in an attempt to establish but-for causation. (*See* Pl.'s Opp'n at 28; Second Am. Compl.); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, Duplan's conclusory allegation of retaliatory animus is not sufficient to survive a motion to dismiss.

### ii. Adverse Employment Action

With respect to Duplan's remaining allegations that the City again retaliated against him after he filed his October 2014 EEOC charge and complaint in this Court, those claims fail to demonstrate an adverse employment action. An adverse employment action is one that would dissuade a reasonable employee from engaging in a protected activity. *Vega*, 801 F.3d at 90; *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). Examples of materially adverse actions "include termination of employment, a demotion evidenced by a decrease in wage or salary . . . [or] *significantly* diminished material

11

responsibilities . . . ." *See Vega*, F.3d at 85 (emphasis added). For diminished material responsibilities to constitute an adverse employment action, a change in job responsibilities must amount to an action "more disruptive than a mere inconvenience or an alteration of job responsibilities." *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *see also Demoret v. Zegarelli*, 361 F. Supp. 2d 193, 202–03 (S.D.N.Y. 2005), *rev'd on other grounds*, 451 F.3d 140 (2d Cir. 2006).

Here, neither the assignment of new responsibilities nor the cancellation of Duplan's time management access rises to the level of an adverse employment action. First, Duplan's claim that the assignment of new responsibilities in November 2014 and January 2015 constitutes retaliation rests on the conclusory assertion that these assignments "were well below [Duplan's] civil service as well as his functional title." (*See* Second Am. Compl. at ¶¶ 21, 23; *see also* Pl.'s Opp'n at 29–30.) However, Duplan provides no factual allegations that plausibly demonstrate that his new responsibilities were below his title. In fact, when Duplan made similar allegations to the SDHR in 2014, the SDHR found that Duplan's newly assigned responsibilities of "facilities management," "oversight," and "fire warden" fall under the general duties of his civil service title. (*See* Def.'s Ex. E at 5.) Accordingly, Duplan fails to plausibly allege that the assignments of new responsibilities constitute adverse employment action. Thus, Duplan's claims of retaliation occurring after the filing of his October 2014 EEOC charge are dismissed.

Similarly, Duplan's claim that an unknown City employee cancelled his access to the time management system in September 2015, after he filed this action, fails to plausibly allege an adverse employment action. (*See* Second Am. Compl. at ¶ 25.) Courts have recognized that the mere alteration of job responsibilities – without evidence of diminished pay, benefits, or other terms of employment – does not constitute an adverse employment action. *Brown*, 673 F.3d at 150; *see Reckard v. Cty. of Westchester*, 351 F. Supp. 2d 157, 161 (S.D.N.Y. 2004) (finding that

failing to assign the plaintiff her desired job responsibilities did not constitute adverse employment action because it did not affect her "pay, benefits or any other terms of her employment"); *Awad v. City of New York*, No. 13-CV-5753 (BMC), 2014 WL 1814114, at *11 (E.D.N.Y. May 7, 2014) (finding no adverse employment action where plaintiff lost access to her time management system).6  Therefore, the factual allegations in Duplan's second amended complaint do not give rise to an inference that losing access to the time management system – without evidence of diminished pay or benefits – is more than a mere alteration of Duplan's job responsibilities.  Accordingly, Duplan's retaliation claim regarding his allegedly cancelled access to the time management system is dismissed.

    **c. Hostile Work Environment**

To state a hostile work environment claim, Duplan must plead facts that would tend to show that the conduct: (1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic, in this case, Duplan's race and national origin.  *Patane*, 508 F.3d at 113; *accord Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001); *see Figueroa v. Johnson*, 648 F. App'x 130, 134–35 (2d Cir. 2016).  In other words, plaintiff must show that "the workplace is permeated with *discriminatory* intimidation, ridicule, and insult, [sic] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

---

6 Duplan's conclusory assertion that he was left with "little to do" after the City cancelled his access to the time management system is belied by his own factual allegations.  Duplan's second amended complaint alleges that the City gave him additional responsibilities in November 2014 and January 2015. (*See* Second Am. Compl. at ¶¶ 21, 23.)  At best, Duplan's allegation suggests that the City has continued to alter his job responsibilities in line with the general duties that persons with his civil service title may be assigned. (*See* Def.'s Ex. E at 5.)  As discussed, the mere alteration of Duplan's job responsibilities is not sufficient to state a claim of adverse employment action.  *See Brown*, 673 F.3d at 150.

13

abusive working environment." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (emphasis added) (internal quotation marks and citation omitted).

To the extent that Duplan alleges a retaliatory hostile work environment, Duplan has not made out a prima facie case. As noted above, Duplan has failed to plausibly allege that the acts taken against him were in retaliation for any protected activity. Moreover, the actions complained of are hardly give rise to the type of severe course of conduct actionable as a hostile work environment, including his conclusory allegations that he was "alienated, humiliated, and isolated." (Comp. ¶ 18.) *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). To the extent that Duplan asserts a hostile work environment based on Rajpersaud's remarks in 2011, this claim fails as well. The Second Circuit has held that "a few isolated incidents" of racial epithets do not constitute a hostile work environment; "there must be a steady barrage of opprobrious racial comments." *Schwapp v. Town of Avon*, 118 F.3d 106, 110–11 (2d Cir. 1997) (internal citations and quotation marks omitted); *accord Dorrilus v. St. Rose's Home*, 234 F. Supp. 2d 326, 335 (S.D.N.Y. 2002) ("Casual comments . . . will not trigger []relief pursuant to [Title VII]." (internal quotation marks omitted)); *Suarez v. N.Y. City Dep't of Human Res. Admin.*, No. 09-CV-8417 (WHP), 2011 WL 1405041, at *4 (S.D.N.Y. Mar. 24, 2011) (supervisor's reference to plaintiff as "fat ass" and "Puerto Rican wet back" were "stray remarks" that did not amount to a hostile work environment); *Pagan v. N.Y. State Div. of Parole*, No. 98-CV-5840 (FM), 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18, 2003) ("Even if [defendant] called [plaintiff] a 'fat Puerto Rican' twice rather than once, the series of [four] disparaging remarks attributed to him clearly does not amount to the sort of 'extremely serious' behavior required to give rise to a hostile work environment under Title VII."). Thus, by any measure, Duplan has failed to plausibly allege that his workplace was "permeated with [retaliatory] intimidation, ridicule, and

14

insult" objectively severe or pervasive enough to alter the conditions of his employment. *See Gorzynski*, 596 F.3d at 102.

## CONCLUSION

For the reasons set forth above, the City's motion to dismiss (Doc. No. 22) is granted. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

Dated: Brooklyn, New York  
      March 30, 2017

*Roslynn R. Mauskopf*  
_____  
ROSLYNN R. MAUSKOPF  
United States District Judge